Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw none and give their attention for the court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. Welcome to this session of the United States Court of Appeals for the Fourth Circuit. On behalf of the court, I want to thank Dean Martin and the NFF Khan School of Law here at High Point University for hosting us this morning in this wonderful space. Dean, you've been nothing but gracious to us. Really enjoyed spending time with you and the students and others at the reception last night and look forward to three really interesting arguments today and appreciate all who have taken time to be here with us. And so, with that, we'll get started. We have three cases on for argument. First up is 25-4234, United States v. Moses. Ms. Hester. Morning, and may it please the court. Anne Moses. This case spotlights a phenomenon that has become all too common in recent months. Law enforcement officers violated a person's Fourth Amendment rights and then revised history to conceal it. But video recordings reveal what really happened during the encounter. Here, the district court clearly erred when it accepted Officer Mollis' testimony that he saw Johnny Moses run a red light and smelled marijuana, when video evidence contradicts that testimony in multiple ways. Now, Officer Mollis was allowed to stop Johnny Moses based on the registered owner's suspended license. But Mollis violated Mr. Moses' Fourth Amendment rights when he continued to stop after he realized he had stopped the wrong person and without reasonable suspicion that Mr. Moses himself was breaking the law. But did he initially clearly have the authority to initiate the traffic stop based upon the suspicion of the suspended license? That's correct, and we don't contest that at all. That's what Kansas v. Glover says. But the problem occurred when he walked up to the car and immediately recognized he'd had a picture of Mr. Moses' father, who was the registered owner, that he'd reviewed beforehand. And he immediately recognized when he walked up to the car that Mr. Moses was not the registered owner of the car. But he also, at least according to him, immediately recognized or discerned the smell of marijuana. That's what he testified to, Your Honor. But body cam videos contradict that testimony, both about a red light violation and about marijuana smell in multiple ways that make the district court's fact findings implausible. But let's start with the fact that there was in fact marijuana in the car, right? So that seems to suggest that when he testified to that fact in front of the district court, that there was something to that. Except for the fact that the marijuana was double packaged in a vacuum-sealed bag. He had an answer for that. He said that there was at least some of those packagings that were not quite as sealed. And in any event, he testified that in some cases, even through the vacuum seal, you can smell marijuana. And I get that. You have all kinds of quarrels with what he is saying. But in the end, the district court saw this officer firsthand, was able to consider his demeanor, the way he testified. And we're not. So ultimately, this is a credibility fight and a real challenge for you. It is a credibility fight, but the district court can't insulate its findings by calling them credibility findings. The court says that in McGee. And it also says that when there is objective evidence that contradicts the district court's findings, that this court can still find clear error. And here we have objective evidence in the form of a video, two body cam videos, that contradict what his testimony was about the packaging and about other things as well. Because if you watch video contradict his testimony, that he smelled marijuana. Well, in multiple ways. And I'll start with the most obvious one, which is that he affirmatively told Officer Bull when she asked what they were searching for. She was an officer in training helping him search the car, that they were not searching for marijuana. This was brought up during the suppression hearing. And most never explained why he would say this if he was if he had, in fact, smelled marijuana. He did say they're searching for ecstasy, which he had found. And I understand the point that it would maybe make sense if he smelled marijuana to say we're looking for that, too. But that but what doesn't make sense is that he says we're not looking for marijuana. That would be really bizarre if if the officers have their heads in the car and they're able to smell marijuana. And he never offered any explanation for why he said that. That's not the only thing either, because most repeatedly gave only the owner suspended license as the reason for the stop. He never mentioned either a red light violation or marijuana smell during the stop, even though any officer who had observed those things would have mentioned them under the circumstances, mentioned them to Mr. Moses. Well, most obviously to his supervising officer during this use of force inquiry that followed Moses arrest, because during that arrest, Mollison, another officer threw Mr. Moses down on his face. And most and Moses began complaining immediately, like before they even had him on the ground. He's complaining. My daddy's license was the only reason for the stop. And you dropped me on my face. And he continues complaining about this for three full minutes in front of a dozen officers, including the supervising officer. But when the supervising officer walks up to Mollison and says, tell me what happened again, Mollis gives the the only reason for the stop as the register owner suspended license. Well, you do have another reason. It was a red light violation was alleged to you. And he doesn't say that either. And that just doesn't add up. Because under these circumstances, any officer who's being accused of seizing someone without reasonable suspicion that he had done something and then dropping him on the ground would have said what his other reasons for were, especially if marijuana was one of those reasons, because all of officers know, if they smell marijuana, then they probably get to pat the person down. And they definitely get to get into the car to start red light violation, at least a justification for the stop. It could be Yes. But again, it doesn't make sense that he doesn't bring it up. When he's faced with all these opportunities to do so. In fact, he, you know, when he also tells Moses four times that the suspended license is the reason for the stop, even though the first time he says that he says, I didn't realize you were driving the car. But then he keeps on saying that the suspended license is the reason for the stop after most with respect to Moses. And again, he's got an explanation for everything, which I get it. It's frustrating. But with respect to Moses, he tells the court, the district court judge, well, I didn't want to invite the attention of the stop by immediately referring to marijuana, I wanted to make sure that we didn't, that we were able to continue to process the stop. That seems to make some sense. Okay, I have two points to make about that. First off is why didn't he tell him about the red light violation? But my second point is, if you watch Officer Mollis's video all the way to the end, which takes place when he gets to the end, he says, you stopped me for my dad suspended license, and then you threw me on the ground. And even then, Mollis doesn't say it's for any other reason. He says, Yes, I stopped you because your dad's license was suspended. What's done is done. That's all he says. And that also doesn't add up. But that's literally true. That's why he was stopped. Yeah, but in the face of this accusation of you did something wrong, because you dropped me on the ground after you stopped me for my dad's license. That just doesn't make sense. Like this court can look at that and say, that's not how a person would logically respond. But can we, I mean, if we could reach that conclusion, I grant you, we could look at all the facts and agree, hey, then may not make sense to me that that wouldn't have come up. But when there's testimony from an officer about the smell, and there is at least an explanation that he gives, what authority do we have to reverse that? That seems like a finding that is based on facts in the record. Maybe, you know, maybe not the best reading, maybe equal that you could have gone the other way. But we're bound to affirm if there's if the finding has any evidence in the record, then how do we get to the point that there's none? Well, I don't think that that's exactly right, because if you look at what the court did in United States versus Miller, the court reviewed the video. And basically, I'm asking you to do what you did, what the court did there, which is review a person's words and conduct on a body cam video, in that case, it was the woman who's driving the car, and determine whether the district court's characterization of testimony about that conduct is plausible. And I'm just saying that that Officer Moss's testimony about what happened during that stop is not plausible in light of all of the things that you see on these videos that contradict it. There's even more than what we've discussed. Also, there are about 11 other officers on the scene, and three of them even had their heads inside of the car, but none of them mentioned marijuana until Bull finds this in a vacuum sealed bag. So it's really just not believable that out of all of these trained officers, Mollis would be the only one able to smell marijuana. So what what's interesting is, is what exactly are you challenging here? There are different stages of this stop. There's the initial stop. Then there's an extension of the stop. There's then a frisking that goes on and the search of the vehicle. Are you contesting the initial stop basis? No. So then we're dealing with the extension of the stop. That's correct. With the marijuana. But there's also, I pointed to you, the red light violation. Right. And why is that not sufficient, at least constitutional, good constitutional basis for the extension of the stop? Well, it would be if it really happened. We're not disputing that it would be if it really happened. But again, we just you're relying upon. There's no corroborating evidence of it. There's no corroborating evidence of it. But also there's actually conflicting evidence because of what he continually says throughout the stop and afterward, not just to Moses, but also to his supervisor about the reason for the stop under circumstances where anybody who had some other reason would have said so. So and at least in terms of understanding how that works, you got initial stop and says, OK, an extension in the frisk. If the frisk is their basis for the frisk, once you have an initial stop. Not if the not if the reason for the stop is the red light violation. So let's talk about the frisk, because if you don't if you disagree with me about the marijuana smell, then I mean, if you disagree with me about the red light violation, but agree with me about the marijuana smell, then you have to look at whether the frisk was a violation of his Fourth Amendment rights. And it was he consented to it. He didn't consent either by raising her shirt or responding verbally after Mollis had already put hands on Moses. Because no reasonable person observing the exchange with Mollis would interpret Moses raising his shirt as consent for a pat down. At that point, Mollis hadn't even asked for consent to search. He had ordered Moses to get out of the car and come over to the sidewalk, which is what Moses was trying to do. When Mollis asked, do you have any weapons on you or anything like that? And this court has recognized in at least three published cases the law enforcement practice of asking people to lift their shirts in high crime areas to prove that they don't have guns on them. He didn't ask them. He did it voluntarily. He did it voluntarily. And people do that. In fact, an officer testified in the Peters case that that that what Moses did at lifting his shirt is the typical response when officers ask that question. And it means no. Well, that's fair enough. But isn't it a court for the fact finding matter for the district court to handle when we really review it for clear error? It really isn't in this case because there's no dispute factually about what happened. The question is, how do you interpret those facts? And also the question is, like, what what was the scope of his intent when he pulled up his shirt? He's obviously allowing the officer to look. So that is consent to allow the officer to look at his bare midriff. But it's not consent for a full pat down search. And I would just direct you to United States versus Neely in that context, because the court has to ask what a reasonable how a reasonable person would interpret the exchange. And whenever this court is reviewing reasonableness questions, it has to do that de novo. And do I understand your position about his verbal consent to incurred after the officer began the frisk? Is that why you say it's no good? That's right. He was already doing he was already had his hands on him. He'd already begun. It was clear that's the type of situation where where it's clear that no matter what he does, he's going to get frisked. So that's not really consent in the first place. But also under Illinois versus Wardlow, the Fourth Amendment violation has already occurred because he's placed his hands on him without consent. So, counsel, do I understand you're saying the district court's finding of consent was we reviewed de novo? That's right. Under these circumstances, because there's no what's the case that that says we review that finding de novo rather than for clear. So I cited in the briefs, it's an unpublished case where this specific thing comes up, where there's a video. And so the historical facts are not in dispute, but also just the fact that this is a reasonableness determination and the court has to assess reasonableness questions de novo, those two bases. And I believe I cited Bowman in support of that that question. One more point with respect to the consent. I'm trying to understand that de novo as to reasonable suspicion. But fact finding regarding consent is the case law pretty clear, that's clear. If there is a finding of fact, but what I'm saying is that here, the historical facts are not in dispute. There's no question about what he did and what what Mollis did. Mollis asked the question. He raised his shirt. Nobody disputes what happened. But the question is, what did that mean? So when you're looking at what does that mean? I believe Carter is the name of the case. When you're looking at what that means, then you have to and I see I've run out of time. Can I continue? You can answer when. So the question is how a reasonable person would interpret those interactions. And when that is the question, then you have to apply de novo review. Thank you, Miss Hester. You've got some time left for rebuttal. This would. Good morning and may it please the court. Julia Wood on behalf of the United States. As my friend concedes and as this court has pointed out, this case turns on the district court's pure credibility determination as to Officer Mollis' testimony that he smelled marijuana and he saw Mr. Moses commit a red light violation before he pulled him over. This court grants those determinations the highest level of appellate deference and will reverse only if in the extremely rare occasion where there is objective evidence that contradicts the testimony or whether where it's so internally inconsistent or implausible on its face that no reasonable fact finder could credit it. Thanks. There's one fact initially when the stop is made and he has a partner there and yet he says later on he smelled marijuana. He didn't say it then, but he tells the partner we are not searching for marijuana. Why would you tell that if you smell marijuana? Your Honor, there are reasonable explanations for all of these facts. I do want to point out that the district court drew the inferences and those were reasonable and we defer to those, but I can address especially that testimony. This was an officer. Empresses cannot treat themselves and you don't build upon empress on empress to get to that conclusion. The question is you've got he's got this partner there. I guess it's a training partner and you know he doesn't say anything about smelling marijuana at that time. It's much later that comes up. Even tell the partner when they're getting ready to do the car. We are not looking for marijuana. So I'll address that. This would really contradict saying later on I smelled it before we get it went in. I don't think it does when you look at the whole context and I'll just go over the go over kind of the exchange. Officer Bull was an officer in training and she said what are we looking for in this car? And Mollis said drugs. She said guns, drugs, weapons. He said well we're searching for drugs and then she said always that plus one. Now this is not in the record, but when CMPD officers are you know conducting a stop, everyone knows that plus one that defendants are challenging the smell of marijuana as a basis for stops at this point because of the legalization of hemp. So officers often look for an additional factor. So she says always that plus one. You just made a point about this not being in the record. Why isn't it in the record? I mean that explanation might make sense, but not for us. It didn't come up and it didn't come up at the suppression hearing, but it does make Officer Mollis and even without that background knowledge, Officer Mollis says it's not for marijuana, it's for ecstasy. And he says you don't need that plus one. So he's explaining to this officer in training you don't need that plus one because I just found ecstasy on this person and everyone there's absolutely no doubt that finding ecstasy. It seems like marijuana is fairly central to the issues before us. That smell of marijuana, there's the registration issue with the car that justifies a stop and even if you rolled the red light, it's not necessarily you would get someone even out the car, but for the marijuana. Maybe you could, but it seems like marijuana is the whole reason you get Mr. Moses out the car. And so it feels fairly important. And do you agree with that? I mean, is the smell of marijuana central to getting Mr. Moses out the car? I mean, after that, you got consent. After that, you got the body blooding, but you got to get him out the car. And it feels like marijuana is the kind of central point of that. Do you agree with that? I do agree with that. And so go ahead. I was just going to say, and as my friend also concedes, it does under this court's current law, give carte blanche to get him out of the car, frisk him, probable cause. Fair enough. So if it's central, really all we have is his testimony about it. Now that's, of course, evidence and maybe that's enough with the district court's finding. But it is odd that he never mentions it to anyone at the scene, not to Mr. Moses, not to any other officers. And as Judge Wynn said, he didn't just not mention it. He said, we're not looking for it. It seems like, I mean, I don't know what the facts are that would say, you know, we can second guess a district court in that time, but aren't we getting pretty close to them? I don't think so, Your Honor. And I think when you look at the context, this was an evolving scene. After he got him out of the car, he did the frisk, which was justified. He had reasonable suspicion to believe he was armed. He had consent. He did the frisk. He finds the ecstasy and that changes everything. Is there any other officer who smelled marijuana? Nobody says it on the body cam. We have the body cam of Officer Bull and Officer Mullis in the record. You know, the fact that Officer Bull is in the car searching and says marijuana leads you to believe that perhaps she smelled it and just didn't. You know, officers are not necessarily in these developing scenes narrating every single thing that they are seeing or hearing or smelling. To get him out of the car. Do you need that? I mean, I need to know you because it seemed to me your answer to Judge Qualabong's question was essential to smelling marijuana, to get him out of the car. But if you have a red light violation, you stop, you have an initial stop that's legal. Do you need marijuana to say, get out the car? Your Honor, thank you. I don't think you actually need the marijuana to get him out of the car in this situation. That sort of goes against what you, maybe what I was reading you saying to Judge Qualabong, that you needed that. And so the question comes, if you don't need that, and if it is contradicted, why go there? You potentially have a red light violation. If you can get him out of the car, then the question comes, can you frisk it? Yes, Your Honor. And I do think there are kind of two, and I apologize, I misspoke as I was speaking to Judge Qualabong. There are kind of two routes you can go. If you credit the marijuana testimony, that gives you a reasonable suspicion to frisk, reasonable probable cause to get in the car. Then you go the other direction. If you discount the marijuana testimony, you have the red light violation. Then you have both consent and reasonable suspicion to frisk. Still, I think the consent, he had both verbal and nonverbal consent. What's the reasonable suspicion to think that he was armed and dangerous based on a red light? So if you take away the marijuana, I do, you know, it's a tougher reasonable suspicion analysis. But I think you still can get there with the body blading, which Officer Mullis testified about, and the district court also found very credible. And then also the fact that it's late at night, it's a high crime neighborhood, and there had been a call of shots fired. I realized standing alone that those factors would not add much to reasonable suspicion. But in this case where he has seen the body blading, I think we get to reasonable suspicion there. But I also believe that we're strong on the consent point. He nonverbally consented when the officer said, do you have any guns on you? And he raised, you know, lifted his shirt. Well, your colleague, on the other hand, says that that means the exact opposite. He's only consenting to, I guess, a look-see, but not a full frisk. So, Your Honor, just because that could be or is a common practice, there's nothing in those cases that says, and it does not convey consent. That's a, it is a fact determination. I do want to address that. This court reviews whether a consent, whether voluntary consent has been given for clear error. There's an en banc case, Lattimore, that's not cited in my brief, but I looked at this after I got the reply. Now, whether the scope of the consent, I do see the cases that say, you know, you need to decide whether an objectively reasonable person would understand that as consent. But this court does review for clear error the consent finding. You agree that the statement of consent by Mr. Moses occurred after the officer put his hands on him? He does kind of simultaneously place his hand on him. I don't think that was a search. He places his hand and he says, do you mind if I check real quick, which is a question. Moses could have responded yes or no at that point. Up to this point, it had been a pretty cordial interaction, and Mr. Moses was cooperative. So, I don't think the fact that he touched him, that touch wasn't a frisk. It wasn't, you know, a search. The fact that he touched him, I don't think, takes away from the voluntariness of the consent. Can I follow up on Judge Quattlebaum's question and add this additional fact that, you know, just causes me concern, is not only did, you know, there was no discussion about marijuana when the ecstasy showed up, but when the officer is asked by a supervisor, well, what happened here, there's no mention of the marijuana there either. You would think that would be the place to say, yeah, this started out as a regular traffic stop, but I smell marijuana and things escalated from there, but he doesn't say anything about that. I think that makes sense, and he actually... What makes sense? What I just said or... What Officer Mullis did made sense, and he addressed that. He said he thought his sergeant was asking for a general rundown, not every detail. It's true that the initial... One of the most important details. It's true that the initial stop was because of the suspended license, and again, this is after he's found the ecstasy, and the scuffle began after he found the ecstasy and... Did he mention ecstasy? To his... No, he did not. So, I mean, that kind of weighs in favor of us. You know, he doesn't... The ecstasy at this point is the most important thing because that is actually what, you know, he pulled out of his pocket. That's when he went to detain Moses and when Moses then began to struggle, and he didn't mention that either. What's the case where an officer says, I smelled marijuana, where we could, and the district court finds him credible, that we could say that's, you know, clearly erroneous? I mean, how much absence of other corroborating evidence does it have to be? Is there a case where an officer says that, that we could reverse? I can't think of a case because I think it would have to be the finder of fact is there and doesn't smell marijuana because it can't just be because a district court is entitled to, you know, credit the testimony of even if he had said, I didn't smell marijuana, and then he comes into court and says, I smelled marijuana. The district court is entitled to credit that testimony. So, I think it would be a very tough, you know, a tough case, but there are examples, I mean, of in the. What about if, you know, he says I smelled marijuana, district court finds it credible, and there's, you know, video cam evidence that someone asked him if he smelled marijuana at the scene and he says no. In that case, could we find, could we vacate a suppression, a denial of suppression? I don't think so because the district court is the finder of fact and the one that is making this determination of whether he either lied on the stand or he lied in the body cam footage. And so, the district court is the one who's observing the demeanor, the inflection, the cross-examination. So, I don't think in that situation that this court could reverse. It just seems to me that you spend a lot of time talking about smelling marijuana. There's a lot of contradictory evidence as pointed out by both Judge Quattlebaum and Judge Diaz here. And yet, it seems pretty clear that at least under the United States Supreme Court law, talk about the Maryland versus Wilson case, once you have a traffic stop violation, police officers may, without violating the Fourth Amendment, order the person out of the car. If you accept that and you say there's a red light violation, then it must be something here that does not give you a lot of comfort in believing that that red light violation occurred. Because that alone, at least under this Maryland versus Wilson, would get him out of the car. Once you get him out of the car, then you have some evidence there of consent. Because he asked me, do you want to do it? He said, yes, you can consent. You can search me or whatever. That's basically what. Now, whether or not that goes to the full scale or not is another question. But you spend a lot of time talking about marijuana on a case where, and we don't often see it like this, it looks pretty strong, the evidence that that didn't happen. That he didn't smell marijuana. And if he did, it's more of a looking back determination as opposed to a forward determination. Because the video cam, and I've seen that video cam, does not support it. It is not there. I don't know how you can look at that and say that happens. And you got direct indications to his partner. No, we're not searching for marijuana. Now, why in the world would you say that if you smell marijuana? So, but the point, going back to the original point is, do you have to go there? Because you are going there very strongly. But it would seem to me, if you have another path, why wouldn't you take that? Your Honor, I think we're both on strong on both paths. And I think that. I think you're strong, but you obviously were not listening to me. I apologize. You obviously didn't look at that video and you're not looking at the evidence objectively. And sometimes you can, you have a feeling is strong and you want to support the trial judge on it. But then if you have a, I think a stronger avenue that might exist, why wouldn't you focus there? Because it will get you to the same place. It will get us to the same place. And we're strong on the red light violation. Then I think, you know, the marijuana smell. On the red light, if you're on that route, you have to have justification to frisk. I mean, the marijuana gives you immediate justification for frisk. Judge Wynn's right. He can get, he can get out the car based on the traffic violation, but that doesn't give you the right to frisking necessarily, right? So you have to go to consent there? That's exactly right. To consent or reasonable suspicion without the odor of marijuana. Do you contend you have reasonable suspicion? Assume there's no consent. Assume that we disagree on the marijuana. Is there any other reasonable suspicion? I think there is. And that's where, you know, we do have the consent. So I don't think we need this. But I understand that. But the body blading, which he credited, the district court credited. What's body blading? Body blading is, Officer Mullis testified that it's when a defendant kind of turns their body away to try to hide contraband. So when he was getting out of that car, instead of the way that, you know, you can get out of the car to get out of the car, you turn around to grab your cell phone. Instead of getting out and reaching back through your legs, it was as if he was trying to keep his body forward. And that made Officer Mullis suspect that he had something on him. He grabs the phone between his leg and you call that body blading. Yes, that is what Officer Mullis. You have a phone between your leg. You're going to have that as a basis for reasonable suspicion to do something else simply because you're grabbing a phone between your legs. In an extremely unusual manner was Officer Mullis' testimony that the district court credited. And the district court actually said this is the most unusual way of getting out of a car that I've ever seen in all my years of doing this. So the body blading combined with the video. It is on the video, yes. And it shows him reaching in that particular manner. It does, yes. Is that an area, is that an expert opinion? Does that have to be vetted through as an expert opinion? Or is that a matter of fact? I think that's a matter of fact because it goes to Officer Mullis' years of experience, which courts do in these kinds of factual findings. The law enforcement experience on the job is part of the factual determination. So I do think, you know, we have our path with the marijuana, which I understand, Judge Wynn, you do not think is strong. But we also have our... I think I'm pointing there because part of it is there is a public perception. And one of the things that's come up, if an officer says, I smell marijuana, it has become sort of a nice way to ease into it. And people know this, officers know this. And under these circumstances, this doesn't help for someone to later on come and use that as a justification, knowing it works. That's the problem you've got. It may actually be that happened. But the facts are pointing to it would cause a serious problem of a public policy problem at the very least, where you have post hoc justifications for an otherwise unlawful search of a person. So then I think we are strong on the red light violation. And then you have the consent for the frisk. And then you find the ecstasy and you have the probable cause to search the car. So I think either way, this court goes. And at the heart of this is the credibility determination on both the red light violation as well, which this court would not overturn under these circumstances. Do you have anything else? No. If the court has no further questions. Thank you very much. I ask that you affirm. Thank you. I'd like to start kind of where Judge Wynn left off, which is talking about this marijuana justification. I mean, the government comes in here and gives you an explanation for what happened in that car when the other officer said it's the plus one. That's not in the record. What's also not in the record is that officers ask people all the time, where's the marijuana when they smell marijuana? I mean, we see that over and over in these videos. I'm sure all of you have seen it as well. And people confess because they don't think they're going to get arrested for having marijuana. So I would bring that up as another reason why it's just not believable that he doesn't ask people about marijuana. Based upon the traffic violation to have him get out of the car, then it seems to me that the contention is that marijuana odors, Judge Qualibon alluded to, is a basis for the reasonable suspicion for that leads to the frisk. And without that, what's the problem with having a red light violation, the so-called body bleeding, and their gunshots that have been fired before this? There's one other point that I didn't understand why they didn't make a deal, but it seems like to me he was parked somewhere when the officer saw him. It seems like they sit in the middle of the road. I don't understand what that meant. But when you add all those things together without the marijuana evidence, is that enough for reasonable suspicion? It's really not. And I would like to talk about that. Let's not forget this was a blatant red stop violation. A what? Blatant red stop violation. I don't know what that means. I don't know either, but that's what he said. Okay, so let's start with the red light violation. Because even if he saw a red light violation, he offered no explanation for why that suggests the person is armed and dangerous. And that's what he's got to have reasonable suspicion of in order to pat somebody down. He also talked about this blading thing, but the government doesn't explain how Mullis could still suspect blading after Moses got out of the car and obeying his commands, faced him directly, and exposed his entire midriff. I mean, that is completely inconsistent with the idea that he was somehow blading when he got out of the car. Also, with respect to what I mean, is it really, you know, I mean, assume there's something called body blading, and it's something that people might do to shield either contraband or a weapon from the officer's view. I mean, I mean, pulling your shirt up might, you know, might be inconsistent, but it doesn't expose all the areas that a weapon, for example, could be in. Well, that is true, but that's not what he testified to about the blading. He said the blading was suspicious because he was hiding the front of his body from me. But then he walked around the car, and he showed him his whole front of his body. He raised his arm, and then he pulled his shirt all the way up. And I mean, really exposed like a foot of his midriff to the officer. So that makes it really hard to believe that he was actually blading when he got out of the car. And Mullis also admitted guilty people don't typically drive toward the location of a shots fired call as Moses was doing. And then there's this whole slow roll bit, but the court's decision in Miller really establishes Moses wasn't slow rolling when he stopped 13 seconds after the blue lights came on. The court can see for itself on the video. Moses doesn't seem especially nervous. And also, Officer Mullis mentioned that he gave from his pants corroborated he was his explanation that he was leaving work. But also, what does this have to do with whether he's armed or dangerous if he is not being completely accurate about his travels? And again, Mullis never explains why that has anything to do with the suspicion that he's armed and dangerous. So, you know, if the court agrees with me that there's clear error on the marijuana smell, but for some reason disagrees with me about the red light violation, still, that pat down search was not justified. And everything that flowed from that and from the stop, it has to be pressed. The marijuana smell that doesn't exist can't get him into the car to search the car, nor can the pills that were recovered from this unlawful pat down search get him into the car, because all of that makes the search of the car the direct result of this unlawful conduct and fruit of the poisonous tree. There's an initial stop, and even without the marijuana, there's a red light violation. And if this Maryland versus Wilson case says you can ask an individual to come out of a car at that point, are you saying at that point, the officer that the defendant can't consent to being pressed? In other words, you can't even ask him, because that's what he did. He says, can I search you? And you're saying at that point, he cannot ask without reasonable suspicion, can I search you? No, no, I think you're misconstruing what I'm saying. Our position is that he did not consent. That motion of lifting his shirt is a well-known response to that question. But that's not my question. I understand that. But my question is, can the officer ask him for consent? Yes. If he has a legal basis for the seizure, but if he doesn't, there's no legal basis. He cannot ask them. If he is, he cannot say, may I search you? If the seizure is already illegal at that point, then the consent is just, it's more fruit of the poisonous tree. It never would have happened, but for... But the stop violation would have been the basis for the seizure, at least to continue the investigation, right? It could have been, if the court disagrees with me, that that was clear error. I think that we're all on the same page with that. Right. No, I'm trying to understand what you're just saying. The stop violation, was that the red light violation, which makes the seizure okay because of the stop? Once you get there, my question is, even if you don't have reasonable suspicion beyond that, an extension of it beyond that, is the officer prohibited from asking, may I search you? Not if he really saw traffic violation, he can order him out of the car at that point and ask for consent. Yes. And so if he does that, and the defendant then says, yes, you may, then what's the problem? That wouldn't be a problem, but that's not what happened here. Okay. Thank you. Thank you very much, Ms. Hester. I want to thank both counsel for their fine arguments this morning. We'll come down and greet you and move on to our second case. All rise.
judges: Albert Diaz, James Andrew Wynn, A. Marvin Quattlebaum Jr.